IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAZ LINK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-00068-MAB |
| | ) |
| HEATHER HOOD, ET AL., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Heather Hood, Frank Lawrence, Janelle Stanley, and Heather Price's motion, and supporting memorandum, for summary judgment (Docs. 61, 62). For the reasons set forth below, the motion is **GRANTED.**

### PROCEDURAL BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 16, 2020, for deprivations of his constitutional rights while incarcerated at Menard Correctional Center ("Menard") (Docs. 1, 9, 13). Plaintiff claims that he was housed in unconstitutional conditions of confinement. *Id.* Plaintiff filed his first amended complaint on December 1, 2020 after the Court dismissed, without prejudice, his first complaint (*See* Docs. 9, 12).

The Court conducted a threshold review of the first amended complaint, pursuant to 28 U.S.C. § 1915A, and allowed Plaintiff to proceed on one Eighth Amendment deliberate indifference claim against Defendants Hood, Lawrence, Price, and the

Jane/John Doe Placement Officer for housing Plaintiff with another inmate in a cell designed for only one person, where Plaintiff had too little space to exercise or maintain normal health (Doc. 13, p. 3). Defendant Stanley was substituted for the Jane Doe Placement Officer on April 27, 2021 (Doc. 46).

Defendants filed their motion for summary judgment on exhaustion of administrative remedies on July 21, 2021 (Docs. 61, 62). In their motion, Defendants argue that Plaintiff has not exhausted his administrative remedies prior to filing his lawsuit. Plaintiff filed his response on August 2, 2021 (Doc. 64). Having closely reviewed the briefs and evidence submitted by both parties, the Court determined there were no disputed issues of material fact and therefore no hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary.

**FACTUAL BACKGROUND**

Plaintiff is an inmate within the Illinois Department of Corrections ("IDOC") and is currently incarcerated at Pontiac Correctional Center ("Pontiac") (Doc. 65). The events central to Plaintiff's lawsuit took place at Menard (Doc. 13).

Plaintiff's complaint details that while at Menard, he was housed in unconstitutional conditions while in the segregation unit of North 2 cell house (Doc. 13, p. 2). Additionally, Plaintiff complained generally of inhumane conditions at Menard, with cell houses that are shockingly small and designed to house only one inmate. Despite a court ruling mandating that Menard only place one inmate per cell in certain cells, Plaintiff claims that Menard officials continued to house two inmates per cell (*Id.*).

On or around June 3, 2019, Plaintiff requested to be moved to a one-man cell. He spoke with both Defendants Hood and Price, but claims neither took any action. Defendant Price told Plaintiff that Defendant Lawrence, Warden of Menard, said that all "one man moves" would be conducted by July 1, 2019, but Plaintiff was not moved by that date. He then wrote to Defendants Stanley and Lawrence; however, no changes were made to his cell assignment. As the result of being housed in too tiny of a cell, Plaintiff suffers from depression, stress, claustrophobia, headaches, lack of sleep, and loss of appetite (*Id.*). He also cannot properly stretch or exercise, which has caused him to develop a blood clot in his right leg and a shoulder injury (*Id.* at pp. 2-3).

The parties agree that there are two main grievances at issue that cover Plaintiff's Eighth Amendment deliberate indifference claim against Defendants. The first is grievance number 55-8-19, dated July 19, 2019 (Doc. 62-1, pp. 21-23). In this grievance, Plaintiff explains that he is living with another prisoner in a single living cell and it is causing him mental and physical pain (*Id.* at p. 22). Plaintiff does not specifically name any Defendants in this grievance. This grievance was forwarded to Plaintiff's counselor, who received it on August 6, 2019 (*Id.*). Plaintiff's cumulative counseling summary indicates that the grievance office received this grievance on August 6, 2019 and forwarded it to Plaintiff's counselor for a response (Doc. 62-4, p. 8). Plaintiff's counselor responded the same day, stating that Menard is currently in compliance with state statutes and ACA standards regarding cell size and double celling. She informs Plaintiff that no date has been given as to when certain inmates will be moved to single cells (Doc. 62-1, p. 22). This response is also recorded in Plaintiff's cumulative counseling summary

(Doc. 62-4, p. 8). Defendants submitted a log of grievances kept at the institutional level at Menard (Doc. 62-3). Grievance 55-8-19 is marked as returned by the counselor at the first level review to Plaintiff on August 7, 2019 (*Id.* at p. 1).

This grievance was stamped as received by the Administrative Review Board ("ARB") on both July 24, 2019 and August 14, 2019 (Doc. 62-1, p. 22). The ARB reviewed this grievance on August 15, 2019 and indicated to Plaintiff that additional information was required, in that he needed to provide certain missing responses, including the grievance officer and CAO's responses, before submitting this to the ARB (*Id.* at p. 21).

The records from the ARB also include another grievance related to Plaintiff's Eighth Amendment claim. This grievance is undated, but covers the same information as grievance number 55-8-19 (*Id.* at p. 25). Plaintiff describes issues with unlawful cell placement and conditions, in general. This grievance is stamped as received on July 24, 2019 and it was reviewed on July 26, 2019 (*Id.* at p. 24). Plaintiff did not include his counselor, grievance officer, or CAO's response with this grievance, so the ARB returned the grievance with instructions for Plaintiff to provide the original grievance and the counselor's response, as well as the responses from the grievance officer and CAO (*Id.*). There does not appear to be a record of this grievance in Plaintiff's cumulative counseling summary or the Menard grievance log (Docs. 62-3, 62-4).

Plaintiff filed a series of other grievances at Menard, some of which made their way to the ARB. The grievances that made it to the ARB cover a variety of topics unrelated to this lawsuit, including medical issues and issues with a set of headphones he purchased, for example (Doc. 61-1, pp. 3-6). Some of Plaintiff's other grievances sent to

the ARB include the appropriate responses from his counselor, grievance officer, and CAO prior to being submitted to the ARB (*See, e.g.,* Doc. 62-1, pp. 27-30).

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, where there is no disputed issue of fact, no hearing is necessary.

*Exhaustion*

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available

administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozzo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[1] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the ARB. *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by

---

[1] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a)**.** Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g.*, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809**.**

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. §1983 must first exhaust all administrative remedies. *See* 42 U.S.C §1997e (a); *Pavey v. Conley*, 544 F.3d, 739, 740 (7th Cir. 2008). Defendants argue, simply, that there are no grievances in the record that were fully exhausted that name them or describe their actions (Doc. 62). In particular, Defendants point to grievance number 55-8-19, dated July 19, 2019, as it is the main grievance in the record that covers Plaintiff's

claim. Defendants argue this grievance was not properly exhausted prior to Plaintiff filing this lawsuit, as Plaintiff never submitted this grievance to his grievance counselor or CAO prior to filing it with the ARB (*Id.* at pp. 5-8). Plaintiff seems to agree that this July 19, 2019 grievance is the main relevant grievance in the record, as it is the only one he discusses in his response (Doc. 64). Plaintiff explains that he filed this grievance directly with the ARB and also at Menard (*Id.* at p. 1). Plaintiff also explains that he did not receive a receipt that the grievance was received in his cumulative counseling summary in a timely fashion, so he wrote to his grievance officer asking for a receipt, but never heard back (Doc. 64, pp. 1-2). Therefore, Plaintiff argues he had to forward this grievance directly to the ARB. *Id.*

      There are two core issues with grievance number 55-8-19, the main applicable grievance to this lawsuit. The first is that while Plaintiff generally grieves issues that are the subject of this lawsuit, he fails to connect the grievance to any to Defendants or their actions. The Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, ILL. ADMIN. CODE, tit. 20 § 504.810(c). The regulations instruct that grievances should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE, tit. 20, § 504.810(c). Additionally, the Seventh Circuit indicates that an inmate should "articulat[e] what facts the prison could reasonably expect from a prisoner *in his position*." *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 2010 U.S. App. LEXIS 14361, at *6-7 (7th Cir. July 13, 2010).

Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . {E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."). Plaintiff is not required to specifically *name* the Defendants, but he must attribute some actions to them and describe them in the grievance so the Court can identify which Defendants were part of the issues he is grieving. Plaintiff describes general issues with his housing in grievance 55-8-19 and details that he believes the conditions constitute cruel and unusual punishment (Doc. 62-1, p. 22). He mentions that on or around June 3, 2019, he asked a counselor about when he would be moved to a one-man cell and was informed that all of the moves were set to occur on July 1, 2019 (*Id.*). But it would be a stretch for the Court to find this general description of Plaintiff's cell conditions to be enough to notify these Defendants of an issue. There is simply not enough information in Plaintiff's grievance to alert the Defendants to the conditions issues that he is grieving.

The second, and more fatal, issue to Plaintiff's case is that he did not go through the appropriate steps to file this grievance, as he never included his grievance officer or CAO's response prior to filing his lawsuit. Plaintiff generally argues that he did not receive necessary responses to this grievance, which is why he forwarded it to the ARB directly. Before the Court examines whether Plaintiff's argument is supported by the

record as a whole, the Court must first look at whether the grievance process was actually available to Plaintiff. *See Ross v. Blake*, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d 117 (2016) ("Under § 1997e(a), the exhaustion requirement hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") (internal quotation marks and alterations omitted). Administrative remedies are available "only if a prisoner has been notified of their existence" and the process has been "communicated in a way reasonably likely to be understood." *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018). The burden is on the prison to "affirmatively provide the information needed to file a grievance." *Id.* at 538.

Plaintiff's cumulative counseling summary indicates he participated in the orientation process, was provided the orientation manual, and signed for the manual (which includes the process for filing grievances) approximately five times (Doc. 62-4, pp. 16-17; 21-23).[2] Additionally, Plaintiff never argues that he does not understand the grievance process and the record as a whole indicates that he is familiar with the grievance process, as there are grievances in the record that include each necessary response before he submitted them to the ARB. For example, Plaintiff's October 5, 2018 grievance, in which he grieves safety issues, was submitted to the counselor, grievance officer, CAO, and then submitted to the ARB, following all of the necessary steps (Doc. 62-1, pp. 27-30). The ARB stamped this grievance as "received" on June 12, 2019, which

---

[2] Plaintiff's cumulative counseling summary indicates that he participated in the Offender Orientation on April 20, 2005; July 3, 2006; December 12, 2008; April 25, 2012; and July 19, 2016 (Doc. 64-2, pp. 16-17; 21-23).

was right before Plaintiff filed grievance 55-8-19 on July 19, 2019 (*Id.*). While the ARB denied this grievance for Plaintiff's failure to include specific dates, it shows Plaintiff is capable of going through the grievance process from start to finish. In fact, it seems Plaintiff has fairly extensive knowledge of the grievance process. So much so that on November 14, 2018, Plaintiff filed a grievance (185-11-18) in which he grieves that the orientation manual is outdated (Doc. 62-4, p. 10). The evidence demonstrates that Menard affirmatively provided and/or made available information regarding the grievance process in a number of different ways and that Plaintiff was familiar with the grievance process.

With this in mind, the Court concludes that Plaintiff did not fully exhaust any grievances related to this lawsuit prior to filing suit. The evidence shows that Plaintiff did not pursue the relevant grievances past the first response he received. Instead, he simply contacted the ARB directly without waiting for a response.[3] Plaintiff's main grievance at issue was filed on July 19, 2019 and Plaintiff received a response from his counselor on August 6, 2019. This date is documented on the grievance itself, as well as in Plaintiff's cumulative counseling summary. Plaintiff contends that he never received "a receipt" of this grievance being received in a timely fashion, so he wrote to the grievance office and asked for a cumulative counseling summary receipt so that he knew the grievance had

---

[3] For the sake of brevity, the Court declines to examine the undated second grievance included in the record as there is no indication this grievance was ever even submitted to Plaintiff's counselor since it is not recorded in Plaintiff's records, does not have a date, and does not have a grievance number (Doc. 62-1, p. 25).

not been discarded (Doc. 64, p. 2). Plaintiff admits he forwarded the grievance to the ARB directly after not receiving responses.

The record does not support Plaintiff's argument. In fact, *three sets* of records show that this grievance was returned to Plaintiff around August 7, 2019. The return date, and response from Plaintiff's counselor, are included in the ARB's records, and the return date is in Plaintiff's cumulative counseling summary and Menard's grievance log (*See* Docs. 62-1, p. 22; 62-4, p. 8; 62-3). The record indicates that this grievance was, in fact, returned to Plaintiff.

Even if the Court overlooked these three sets of records, Plaintiff's next argument is also not supported by the record. Plaintiff argues that when he did not hear back about this grievance, he wrote to his grievance officer, but there is nothing in the record to support this argument. This letter, or a record of it, is not attached to Plaintiff's complaint, his response to the motion for summary judgment, and/or reflected in Plaintiff's cumulative counseling summary. There is simply no evidence of this letter anywhere in the record. A close examination of Plaintiff's cumulative counseling summary around the time grievance 55-8-19 was filed shows that Plaintiff was seen by his counselor on September 24, 2019 at his cell and stated he was "good" (Doc. 62-4, p. 7). There are no notes about issues he is having with the grievance process, or receiving grievances back in a timely fashion, in his cumulative counseling summary during this time.[4]

---

[4] In fact, from the time Plaintiff filed grievance 55-8-19 until he filed this lawsuit on January 2020, his cumulative counseling summary indicates he filed three to four grievances, some of which he submitted for second-level review. These second-level reviews were reflected in Plaintiff's cumulative counseling summary (Doc. 62-4, p. 7).

Plaintiff does not argue that any of the records submitted by Defendants were fabricated or are incorrect.[5] While Plaintiff attempts to suggest that he was unable to fully exhaust 55-8-19, this argument is unsupported by the evidence before the Court. In fact, the overwhelming evidence is to the contrary. The Court recognizes that exhaustion is an affirmative defense that Defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). The record as a whole shows that Plaintiff did not properly exhaust administrative remedies prior to filing this lawsuit. As such, Defendants' motion for summary judgment must be granted.

## CONCLUSION

Defendants' motion for summary judgment is **GRANTED.** Defendants are **DISMISSED without prejudice** from this action. Plaintiff's claim is **DISMISSED without prejudice** for Plaintiff's failure to exhaust.

IT IS SO ORDERED.

DATED: January 27, 2022

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

---

[5] Additionally, grievance 55-8-19 was stamped as received by the ARB on both July 24, 2019 (prior to Plaintiff's counselor responding and just five days after he wrote the grievance) and then again on August 14, 2019, which was only eight days after Plaintiff's counselor responses (Doc. 62-1, p. 22). While courts have recognized that a plaintiff may have had the grievance process rendered unavailable when an inmate does not receive a response from the counselor in sixty days, eight is far less than that. *See Meyer v. Wexford Health Sources*, No. 3:16-CV-173-JPG-DGW, 2017 WL 1058831, at *4 (S.D. Ill. Feb. 16, 2017), *report and recommendation adopted*, 2017 WL 1048258 (S.D. Ill. Mar. 20, 2017) (grievance process rendered unavailable when inmate did not receive a response from counselor within 60 days).